THOMAS H. BISSELL *vs.* WILLIAM ADAMS AND ANOTHER.

Payments were made by one partner, after the dissolution of the partnership, but before the statute of limitations had taken effect, upon two notes given by the partners during the partnership, one joint and the other joint and several. There was nothing in the circumstances to indicate that the payments were made on the sole account of the partner who made them, although the latter had agreed, on the dissolution, to pay all the partnership debts, which was not known to the creditor. Held that the acknowledgment of the indebtedness by the payments was sufficient to prevent the operation of the statute of limitations upon the notes against both the makers.

ASSUMPSIT, on two notes executed by Wilmarth & Adams, brought to the Superior Court in Hartford county. Adams alone made defense, pleading the general issue with notice of the statute of limitations, the issue being closed to the court. The following facts were found by an auditor, to whom the case was referred. ·

The defendants were partners in business under the name of Wilmarth & Adams, at Windsor Locks, in this state, on the first of September, 1848, on which day the two notes were

executed by them, the same being signed by them individually, and one of the notes being joint and the other joint and several. One of the notes, which was for $2,700, was given for real estate purchased by them to be used in their business, which was that of manufacturing thread, and the other, which was for $2,500, was given for machinery to be used in their business. The plaintiff held the notes as indorsee. They were secured by mortgages of the real estate and machinery respectively, which mortgages were assigned to the plaintiff.

The co-partnership was by mutual consent dissolved on the 4th of May, 1850, and notice of the dissolution was published in a newspaper issued in the city of Hartford. On the dissolution Adams sold and conveyed to Wilmarth all his interest in the copartnership business and assets, and Wilmarth agreed to assume and pay all the liabilities of the concern, and continued for several years thereafter to prosecute the same business at the same place, and in the year 1857 added considerably to the machinery in the mill. The plaintiff knew of the dissolution of the co-partnership, and that Wilmarth thereafter continued the business, and that he had a conveyance from Adams of his interest in the property, but did not know of the agreement of Wilmarth to assume and discharge all the co-partnership liabilities, and did not assent to the arrangement or do any thing to release Adams from his obligation to pay the notes. The plaintiff had from time to time various other dealings with Wilmarth, but after the dissolution had no communication with Adams in relation to the notes until he commenced the present suit. Adams, after the dissolution, continued for many years to reside at or near Windsor Locks, and from and after 1857 was the owner of unincumbered real estate there, and supposed the notes were paid by Wilmarth in accordance with his promise. The plaintiff had from time to time inquired of Wilmarth about Adams and his circumstances, but until about the time of the commencement of the suit had no knowledge that he was possessed of property.

Payments upon the notes were from time to time made by Wilmarth to the plaintiff after he became the owner of them, which, in the absence of any agreement of the parties or any

Bissell *v.* Adams.

direction or request of Wilmarth, were endorsed by the plaintiff as he saw fit. These payments were principally cash paid by Wilmarth, a part being payments of rent by one Medlicott, to whom the plaintiff and Wilmarth leased the real estate and machinery for three years from April 24th, 1863, under an agreement that the plaintiff should receive the rent and apply it on the notes, and a part being the proceeds of a sale of a part of the machinery under a like agreement. The payments, as endorsed on the $2,700 note, were as follows: January 1st, 1850, $266.36; January 1st, 1856, $1,285.97; February 6th, 1861, $12; September 4th, 1863, $25; August 3d, 1865, $50; October 18th, 1865, $300. The payments, as endosed on the $2,500 note, were as follows: January 1st, 1849, $150; March 31st, 1849, $150; June 29th, 1849, $150; October 3d, 1849, $125; January 23d, 1850, $175; October 5th, 1850, $80; July 21st, 1851, $200; March 16th, 1857, $31.24; February 26th, 1861, $18; September 4th, 1863, $25; August 3d, 1865, $50. The plaintiff had also received from sales of the machinery in September, 1863, $39.81, and in March, 1865, $50, which he had not endorsed on the notes; also $462.50 rent from Medlicott, August 3d, 1865, which he had neglected to endorse. The auditor found due on the two notes $7,810.38.

On these facts the case was reserved for the advice of this court.

*Sill*, with whom was *Jones*, for the plaintiff, cited *Whitcomb* v. *Whiting*, 2 Doug., 652; *Atkins* v. *Fredgold*, 2 Barn. & Cress., 23; *Pike* v. *Warren*, 15 Maine, 390; *Dinsmore* v. *Dinsmore*, 21 id., 433; *Shepley* v. *Waterhouse*, 22 id., 497; *Joslyn* v. *Smith*, 13 Verm., 353; *Wheelock* v. *Doolittle*, 18 id., 440; *Sigourney* v. *Drury*, 14 Pick., 387; *Turner* v. *Ross*, 1 R. Isl., 88; *Davis* v. *Coleman*, 7 Ired. Law R., 424; *Burr* v. *Williams*, 20 Ark., 171; *Cleveland* v. *Harrison*, 15 Wis., 670; *Bound* v. *Lathrop*, 4 Conn., 336, 338; *Coit* v. *Tracy*, 8 id., 268; *Austin* v. *Bostwick*, 9 id., 496; *Clark* v. *Sigourney*, 17 id., 511; *Caldwell* v. *Sigourney*, 19 id., 37; Parsons on Part., 184, note *n*, 190, note *o*.

*Waldo* and *Hyde*, for the defendant, cited Parsons on Part., 184; *Clementson* v. *Williams*, 8 Cranch, 72; *Bell* v. *Morrison*, 1 Pet., 351; *Exeter Bank* v. *Sullivan*, 6 N. Hamp., 124; *Kelley* v. *Sanborn*, 9 id., 46; *Whipple* v. *Stevens*, 2 Fost., 219; *Van Keuren* v. *Parmelee*, 2 Comst., 523; *Shoemaker* v. *Benedict*, 1 Kern., 176; *Coleman* v. *Fobes*, 22 Penn. S. R., 156; *Levy* v. *Cadet*, 17 Serg. & R. 126; *Peirce* v. *Tobey*, 5 Met., 168; *Balcom* v. *Richards*, 6 Cush., 360; *Lane* v. *Tyler*, 49 Maine, 252; *Steele* v. *Jennings*, 1 McMul., 297; *Goudy* v. *Gillam*, 6 Rich., 28; *Belotes' Exrs.* v. *Wynne*, 7 Yerg., 534; *Muse* v. *Donelson*, 2 Humph., 166; *Yandes* v. *Lefavour*, 2 Blackf., 371; *Lowther* v. *Chappell*, 8 Ala., 353; *Sigler* v. *Platt*, 16 Mich., 206; *Biscoe* v. *Jenkins*, 5 Eng., (Ark.,) 108; *Borden* v. *Peay*, 20 Ark., 293.

HINMAN, C. J. We are of opinion that the acknowledgment of these debts as still subsisting, by the payments made by Wilmarth from time to time, almost up to the time when this suit was commenced, are, under the circumstances, a sufficient recognition of them as still due, to remove the bar of the statute of limitations as to both of the defendants. It is true that an acknowledgment by one partner after the dissolution of the partnership, and after the statute has attached to the debt, will not generally remove the bar created by the statute. Especially is this so if there is ground for supposing that the acknowledgment was collusively made for the purpose of onerating a joint promisor with the payment of the debt. *Coit* v. *Tracy*, 8 Conn., 268. But in this case the plaintiff became the owner of the notes before the partnership of Wilmarth & Adams was dissolved, and a long time before the notes became due; and although the payments were made to him by Wilmarth, yet there was nothing in the circumstances under which they were made to lead any one to suppose that they were made on his account alone; and being made before the statute had attached to the notes, the plaintiff had a right to infer that they were made on account of both parties, because both were at the time liable.

Indeed, after the decisions upon this subject in this court

we must consider the question as settled in Connecticut in a case like this.   We perceive no difference in principle between this case and that of *Clark* v. *Sigourney*, 17 Conn., 511. That was a case of two joint makers of a note, and it was expressly held that a promise made by one of them to pay it was sufficient to take the case out of the statute of limitations against both; and as the promise in that case was made before the statute had attached, it seems in its circumstances to be almost identical with the case under consideration.   And the current of decisions by this court has been uniform on this subject.   *Lord* v. *Shaler*, 3 Conn., 131; *Bound* v. *Lathrop*, 4 Conn., 336; *Caldwell* v. *Sigourney*, 19 Conn., 37.   It is unnecessary therefore to discuss the propriety of our decisions upon the subject, as we ought to be controlled by them, whatever may be thought of their propriety in every instance.

We advise the Superior Court that the plaintiff is entitled to judgment for the amount found due by the auditor.

In this opinion the other judges concurred.